William J. Burke, J.
This is an appeal from a judgment of conviction of the crime of operating a motor vehicle with .10 of 1% or more by weight of alcohol in his blood in violation of subdivision 2 of section 1192 of the Vehicle and Traffic Law, said judgment arriving, out of a jury verdict having been rendered in the Town of Clay Justice Court. The defendant was also found guilty of having violated section 1202 (subd [a], par 1, cl j) of the Vehicle and Traffic Law, stopping, standing or parking in highway.
The facts briefly indicate that two Clay police officers found the defendant’s car stopped in the driving lane of Route 481, with the car’s motor running, brake and headlights on and the defendant slumped over the wheel. The officers testified that after awakening the defendant and observing him, in their opinion he was intoxicated. The officers also testified to a strong odor of alcohol coming from the defendant as well as from the interior of the automobile, there having been several opened beer cans and an opened half pint of brandy. The defendant was ultimately taken to the North Syracuse Police Department where a breathalyzer test was administered which resulted in a 0.25% test result. The defendant’s wife testified as to the defendant’s run-down physical condition in that he had not been getting much sleep because of his working. She also indicated that the defendant had been taking medicine that made him sleepy and related an incident to the jury about her having to drive the family auto when her husband became very sleepy after she thought he had taken this medicine during a Sunday ride two to four weeks before the instant arrest. The defendant testified that he had been working seven days a week during the weeks immediately preceding this incident. He testified that on the night of the arrest he started out for work, but turned back because he was falling asleep. The defendant admitted that it was possible that there were beer cans in his car from previous nights of work in that he brought some to work and would put the empties back in his car to bring home and throw away; but didn’t recall any brandy bottle. He admitted having had some drinks earlier that evening around 9:00 at Bill’s Tavern. On *603 direct examination the defendant testified that he had taken the medication on the day he was arrested; however on cross-examination he wasn’t sure that he had.
The jury upon consideration of all the testimony rendered a verdict of guilty as to operating a motor vehicle while he has .10 of 1% or more by weight of alcohol in his blood in violation of subdivision 2 of section 1192, and not guilty of operating a motor vehicle while in an intoxicated condition in violation of subdivision 3 of section 1192.
The defendant among the primary issues raised upon this appeal contends that the defendant was denied his rights to equal protection under the law and his right to due process, based upon the time and length of the instant trial.
The record indicates that the trial started at 9:00 p.m. on June 19, 1975, and a verdict was returned at 6:05 a.m. the following morning. During the trial there were two recesses of six and seven minutes respectively, the last being at 12:05 a.m. on June 20, 1975. The court began its charge to the jury on the law at 4:10 a.m. and the verdict was received at 6:05 A.M.
The defendant’s contention as to his equal protection argument is based upon the fact that basically one arrested for the same crime within the City of Syracuse will be tried during the day before a jury whose sole function for that day will be to decide the facts as presented. Trials in the Justice Courts are before jurors who have been up all day and who are obliged to sit and deliberate until the early morning hours of the next day, often with the realization that the next morning they must carry on a normal day’s functions without proper repose.
The issue of the night jury trial is most certainly the most troublesome issue presented upon this appeal. Our judicial system is historic and noble, but yet like many other systems of our day it is based on precedent and habit, oftentimes structured to accommodate times long since past. The evolution of the nighttime trials arose out of the necessity of small municipalities having to employ part-time Judges who after fulfilling their daily duties at their various occupations, would then converge on the town hall or local meeting place and ascend to the bench to hear and decide the controversies of the local townspeople, as well as preside over criminal trials of crimes committed within the town. Thus to the present day, most Town Justices are part-time employees of the local *604 municipalities of our State, who preside over the various Town Courts at night. However, as a result of the rapid expansion of our suburban areas, a tremendous increase in those courts’ caseloads has occurred, especially in the drinking-driving area. In conjunction with this increase in caseload, more and more jury trials are being conducted and out of the necessities of the system, for the most part, the trials must be conducted at night when the Judge and jurors are available.
The issue of night jury trials has been discussed in several decisions of our State courts. The County Court in People v Passero (78 Mise 2d 548) had before it the very issue presented in the instant case. The court in Passero considered two actions wherein a reversal was urged upon denial of equal protection and due process grounds based upon night jury trials. In the first such action, the court stated (p 550): "This court is unwilling to do away with night jury trials in Town Justice Courts without compelling reasons to show that the practice itself is violative of one’s rights to a fair trial.” The court went on to say that the defense did not during that trial of action No. 1 raise the constitutional argument of the lateness of the trial, and indicated therefore that it could not now raise it for the first time on appeal.
In action No. 2, the defense did raise the lateness of the hour argument during trial, and on appeal an affidavit of a juror was submitted wherein the juror indicated that he was exhausted when he voted to convict at 2:50 a.m. That trial had begun at 8:00 p.m. In the second action the same appellate court went on to say the following when discussing the lateness issue in action No 2 (pp 551-552): "The inevitable and unfortunate consequence is that the defendant’s right to [a fair] trial by jury was so impaired as to amount to a constitutional violation.”
The court then reversed the judgment of conviction and ordered a new trial. The court in People v Rodgers (205 Misc 1106, 1109) in addressing itself to the lateness issue stated that: "It can be clearly inferred from the record that at that late hour [2:00 or 2:30 a.m. ] the jury was worn, tired and must have been without doubt, anxious to return to their homes and without careful and sufficient deliberation * * * This is a substantial illustration of why jury trials especially, held in the nighttime, should not be approved, for it violated the substantial right of the defendant and prevented the defendant from having a fair, unbiased and impartial trial.” *605 While in that case the jury returned a verdict within only a few minutes, the court in Rodgers certainly indicated the possible problems with jury trials in any event due to the lateness of the hour.
In People v Rubin (NYLJ, May 18, 1959, p 15, col. 6), the court stated: "The trial commenced at approximately 8 p.m. on March 17, 1958, and was concluded at approximately 6:30 a.m. on March 18, 1958. The jury commenced its deliberations shortly after 5:00 a.m. This court feels that it is almost impossible for a jury to consider such a case as this with adequate and sufficient deliberation, where important issues are involved, at that hour in the morning and after nine hours of testimony, summations and a charge.”
In People v Murphy (42 Misc 2d 413), selection of a jury began at 7:00 p.m. and a verdict of guilty on all charges was rendered at 6:55 a.m. the next day. In reversing the judgment of conviction, the court stated (p 415): "there was here lacking that degree of serenity and calmness so necessary in a judicial proceeding to assure to both the accused and the People alike a fair and impartial trial ip fact and law. While it appears that there was some degree of acquiescence by defendants’ counsel in the prolonged trial, and an apparent willingness on the part of the jury to enter upon the hazards of a trial commencing at an hour before midnight, involving two defendants and seven charges, we feel it was well nigh impossible for the jury to have brought to their deliberations that degree of calm and untroubled consideration and judgment required to reach a fair and just verdict on the evidence”.
While this court cannot say that all-night jury trials are per se violative of a defendant’s right to a fair trial, it is of the opinion that certain night jury trials by virtue of their very length and time of the night presented are. In a criminal trial a jury by virtue of the very nature of the proceedings must consider all the facts presented to it by both the People, and the defendant, and be further able to consider those facts determined upon, in light of the charge given to it by the court relative to the legal principles of law, and apply that law to the facts of the case before it, to ultimately determine the guilt or innocence of the defendant. This court is of the opinion that this task cannot properly be performed by a jury made up of people who have been awake the whole day of the trial and who must then remain awake throughout the eve *606 ning and throughout the night until the early morning hours of the next day.
Additionally it must be extremely difficult for the Judge, the prosecutor and the defense attorney to properly perform each of their several functions as the strain of the hours build up. Most importantly the witness to the event must be able to be mentally alert enough to be able to recall all the facts within their knowledge that bears on the defendant’s guilt or innocence. This obligation most certainly is hindered by one whose mind has been dulled by the work of the day and the expectation that the following day’s labor will have to be performed with little or no sleep.
This court frequently asks jurors in trials before it to draw on their everyday experiences in deciding issues presented to it, and so must an appellate court in light of the record presented to it, and in so doing this court is of the opinion that the jurors in the instant case could not properly consider the guilt or innocence of this defendant after an all-night trial as disclosed in this record on appeal. The times involved in the instant case must certainly support the position of the defendant-appellant and his attorney’s observation upon the oral argument of this appeal, wherein he indicated that the jurors appeared quite tired to him during the early morning hours.
The public as well as a defendant is entitled to the assurance that there will be a fair trial, and when an appellate court concludes from the record before it that such was not possible that conviction cannot stand unimpeached.
Therefore this court is of the opinion that under the circumstances of this case the instant conviction in the interest of justice should be reversed and remanded for a new trial and that a failure to object in this case does not preclude such a result. The court does not intend, nor does it think that every night jury trial is per se violative of a defendant’s right to a fair trial; that must be decided on a case by case approach, but it is of the opinion that trials that last through the whole night and until the early morning hours such as occurred in this case (verdict at 6:05) cannot be allowed because of the innate dangers of such proceedings. It is apparent that some guidelines must be set up to limit the time within which a jury trial can be had, either by statute or by the establishment of court rules and regulations in this regard. Additionally, an affirmative duty should be placed upon the trial court *607 to inquire of jurors and of the attorneys and witnesses involved whether they are able to proceed with their part of the trial as the night trial proceeds.
I believe that the District Attorney of this county has recognized the problems presented by these late trials and has undertaken affirmative action to help eliminate these all-night trials with the hope that such actions will improve the criminal justice system of our county.
The defendant further contends that reversal error was committed when the court defined the word "operate” after having been requested to do so by the jury, and stated: "So in my opinion, the fact that his wheels are stopped, that he’s there on the highway, the engine is running, perhaps slumped over the seat or sleeping, whether he is intoxicated or not, he is operating a motor vehicle.”
Although the court upon exception to this portion of the charge attempted to correct this by stating, "Let me put it this way, it has been held”, instead of "in my opinion”, this court believes that reversible error was committed when the court interjected its opinion on the facts. It might be noted that five minutes after such charge, the jury returned with the verdict and in the context of this record it appears that the issue of operating was the key fact to be resolved by the jury.
In view of the aforesaid opinion the remaining issues presented need not be decided.
Therefore this conviction is reversed and remanded to the lower court.